UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES TRACK & FIELD AND CROSS COUNTRY COACHES ASSOCIATION | CIVIL ACTION |
| VERSUS | NO: 24-2736 |
| FLOSPORTS, INC. AND DIRECTATHLETICS, INC. | SECTION: "A" (1) |

## ORDER AND REASONS

The following motion is before the Court: **Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Rec. Doc. 17)** filed by defendants, FloSports, Inc. and DirectAthletics, Inc. The plaintiff, U.S. Track & Field and Cross-Country Coaches Association ("USTFCCCA"), opposes the motion. The motion, submitted for consideration on July 23, 2025, is before the Court on the briefs without oral argument.

### I.   Background

The plaintiff, USTFCCCA, is a non-profit, tax exempt professional organization that represents thousands of cross-country and track and field coaches from the college and high school levels. (Rec. Doc. 6, Amended Complaint ¶ 3). DirectAthletics, Inc. ("DA") is a provider of data and event management for timed sports like collegiate track and field. (*Id.* ¶ 5). DA developed a software system called Track & Field Results Reporting System ("TFRRS") to collect and sort data for race/event results and athlete information. Prior to the development of TFRRS there existed no comprehensive, centralized and reliable collegiate event reporting system so there was no way to ensure

that the most accurate data was being factored into event invitations. (Amended Complaint ¶ 12). At some point in 2023, DA was acquired by FloSports, Inc. and as part of that acquisition FloSports obtained complete control over TFRRS. (*Id.* ¶ 35).

USTFCCCA brought the captioned matter under federal copyright law, the Sherman Act, and the Clayton Act. USTFCCCA alleges that TFRRS is a joint work that was created and developed by USTFCCCA with DA through their partnering and collaborative efforts. (*Id.* ¶¶ 13, 14). DA had developed software components for track and field event management prior to 2009, but USTFCCCA alleges that it was only after USTFCCCA began collaborating with DA in 2009, which included contributing its sports expertise and using its contacts in the college sports world to obtain an NCAA mandate requiring the system's use, that TFRRS became the system that it is today.

USTFCCCA alleges that it did not know about the FloSports acquisition in 2023 until USTFCCCA was locked out from the administrative pages that allowed access to the data files (CSVs) that contain event, roster, and performance data. (*Id.* ¶ 38). USTFCCCA advises that its member coaches were also locked out of certain data. (*Id.* ¶ 39). USTFCCCA alleges that after the acquisition FloSports implemented changes to TFRRS that have impaired its functionality. (*Id.* ¶ 40).

USTFCCCA seeks a declaratory judgment that it is a co-owner of the copyright to TFRRS, and as such must be allowed complete and unrestricted access to the system and its data. And as noted, USTFCCCA also brings numerous claims against the defendants under other federal laws.

DA and FloSports (collectively "Defendants") now move to have this action

transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). The basis of the transfer motion is a forum selection clause in TFRRS's Terms of Use. Defendants argue that the forum selection clause is valid and enforceable, and that USTFCCCA agreed to the clause when it began using TFRRS to track data at track and field events.

USTFCCCA concedes nothing and opposes the transfer on multiple grounds, the most salient of which is USTFCCCA's contention that its claims fall outside the scope of the forum selection clause.

## II.   Discussion

A forum selection clause, if valid, may be enforced via a motion to transfer brought pursuant to 28 U.S.C. § 1404(a).[1] *Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. *Id.* at 62. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion, grounded on a valid forum selection clause, be denied. *Id.* at 62.

The presence of a valid forum selection clause requires the district court to adjust its typical § 1404(a) analysis in three ways. First, the plaintiff's choice of forum merits no

---

[1] Section 1404(a), entitled Change of Venue, states in relevant part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

weight. *Atlantic Marine*, 571 U.S. at 63. Second, the court should not consider any arguments regarding the parties' private interests as would be the case for a § 1404(a) analysis conducted in the absence of a forum selection clause. *Id.* at 64. Instead, the court considers arguments about public interest factors only, which may include the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that is at home with the applicable law. *Id.* at 63 n.6 & 64. Third, when a lawsuit is filed in violation of a valid forum selection clause, a transfer will not carry with it the original venue's choice of law rules. *Id.*

A proper application of § 1404(a) requires that a valid forum selection clause must be "given controlling weight in all but the most exceptional cases." *Id.* at 59-60. To defeat a transfer motion based on a valid forum selection clause, the plaintiff would have to prove that the public interest factors overwhelmingly disfavor transfer, which will rarely be the case. *Id.* at 64 & 67.

USTFCCCA argues that even if it was bound by the forum selection clause contained in TFRRS's Terms of Use,[2] transfer would not be appropriate because its claims fall outside the scope of that clause. Naturally, courts look to the language of the forum selection clause to determine its scope, and whether the substance of the plaintiff's claims falls within that scope. *Qualls v. Prewett Enters., Inc.*, 594 F. Supp. 3d 813, 821 (S.D. Tex. 2022) (citing *Buc-ee's, Ltd. v. Bucks, Inc.*, 262 F. Supp. 3d 453, 460

---

[2] To be clear, USTFCCCA disputes that a valid and enforceable forum selection clause exists, and raises numerous other arguments in opposition to Defendants' transfer motion.

(S.D. Tex. 2017)); *Marinechance Ship., Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998).

> TFRRS's Terms of Use contains the following section:
>
> APPLICABLE LAW AND JURISDICTION
>
> This site is created and controlled by DirectAthletics in the Commonwealth of Massachusetts, USA. DirectAthletics makes no representation that materials in this site are appropriate or available for use in other locations. If you access this site from another location, you do so on your own initiative and are responsible for compliance with local laws, if and to the extent they are applicable. By accessing this site, you and DirectAthletics both agree the laws of the Commonwealth of Massachusetts will govern all matters relating to this site, without giving effect to any principles of conflicts of laws. ***You also consent to the exclusive jurisdiction and venue of the state and federal courts of the Commonwealth of Massachusetts in all disputes arising out of or relating to the use of this site.***

(Rec. Doc. 17-2, Exhibit A at 3, Terms of Use) (emphasis added).

The question then is whether USTFCCCA's copyright, Sherman Act, and Clayton Act claims arise out of or relate to USTFCCCA's "use" of the TFRRS site.[3]

Defendants argue that all of USTFCCCA's claims—whether based on copyright law or federal antitrust laws—arise out of and relate to USTFCCCA's use of the TFRRS website. In support of this contention, Defendants point out that each of USTFCCCA's causes of actions alleges injury resulting from restrictions on USTFCCCA's access to TFRRS's administrative functions and data, and from modifications to the functions and features of the software, which impair USTFCCCA's use of the system.

---

[3] The quoted paragraph also contains a choice of law directive but all of USTFCCCA's claims are based on federal law not state law. Defendants provided the Court with a copy of a Data Use and Non-Disclosure Agreement, (Rec. Doc. 17-3), which also contains a choice of law clause but not a forum selection clause. That document is irrelevant to the transfer issue currently before the Court.

USTFCCCA argues that website terms of use like those in TFRRS are designed to govern the relationship between platform operators and users, covering issues like acceptable uses, payment, service availability, and data privacy, in other words typical user concerns related use of the website as a service. USTFCCCA points out the injury it has sustained from being denied access to the site derives from its status as a co-owner of the service that holds all rights attendant with co-ownership, including the right to decide what changes can be made to the system. USTFCCCA maintains that the ownership rights that it is claiming and the injuries resulting from anticompetitive behavior arise independently of USTFCCCA's use of the website.

The Court is persuaded that USTFCCCA has the better argument. Although one of the injuries that USTFCCCA alleges is loss of access to the TFRRS system and its prior functions, *i.e.* "use of" the site, USTFCCCA's entitlement to those privileges is grounded on the allegation that it is a co-author and co-owner of the system. The pivotal issue in the case is whether USTFCCCA is a co-owner of TFRRS. USTFCCCA's status as a co-author and co-owner of the system is not based on whether or not it actually uses the website, and therefore those claims do not arise out of or relate to USTFCCCA's use of the site. The same can be said of the antitrust claims.[4]

Defendants cite *Mendoza v. Microsoft, Inc.*, 1 F. supp. 3d 533 (W.D. Tex. 2014), as persuasive authority for its position but that case involved ordinary subscribers of an

---

[4] The Court acknowledges the possibility that standing (injury-in-fact) for the antitrust claims may perhaps flow from use of the TFRRS site but the gravamen of the complaint is the claim for co-authorship/co-ownership under copyright law and that issue does not derive from use of the site.

online service who sought to evade a forum selection clause by arguing that their claims were non-contractual, and therefore should not be subject to the broadly worded forum clause. The outcome in *Mendoza* was no surprise because the plaintiffs' claims arose directly from their status as subscribers (former) to the site. But again, in this case USTFCCCA's alleged ownership of TFRRS arises independently of its status as a user of the website.

In sum, USTFCCCA's copyright and antitrust claims fall outside the scope of the forum selection clause.

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the **Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Rec. Doc. 17)** filed by defendants, FloSports, Inc. and DirectAthletics, is **DENIED**.

August 25, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE