UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES TRACK & FIELD AND CROSS COUNTRY COACHES ASSOCIATION, | * * * | CIVIL ACTION NO.  2:24-cv-2736-JCZ-JMV |
| Plaintiff, | * * | |
| VERSUS | * * | SECTION "A" JUDGE ZAINEY |
| FLOSPORTS, INC. AND DIRECTATHLETICS, INC., Defendants. | * * * * * * | MAG. DIV. (2) MAG. JUDGE van Meerveld |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY BRIEF IN FURTHER SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

**MAY IT PLEASE THE COURT:**

Plaintiff, United States Track & Field and CrossCountry Coaches Association's ("Coaches") Opposition presents conclusory statements while refusing to bring forth the facts to demonstrate any of the asserted claims.  In fact, the Opposition acknowledges Plaintiff lacks the factual allegations to establish the claims asserted in the Complaints.  Plaintiff does not attempt to overcome its failure to plead the facts necessary to establish the claims, but, instead, offers an unremitting contention that more discovery will reveal all the facts necessary to establish its claims.  Neither this Court's procedures nor binding precedent allow the pursuit of unsubstantiated claims based on a promise discovery will reveal the requisite facts.  The Opposition and, specifically, its repeated appeal for discovery to establish the basis for its claims, demonstrate

Plaintiff fails to set forth any "well-pleaded allegations that would entitle [it] to relief."[1]

Likewise, Plaintiff fails to plead the requisite anticompetitive conduct to sustain a valid antitrust claim. Instead, Plaintiff alleges a "conspiracy" occurred during FloSports and DirectAthletics, Inc. ("DA") acquisition negotiations (negotiations to which Plaintiff was not a party) to exclude Plaintiff from exercising control over software Plaintiff does not own. This bizarre claim amounting to nothing more than frustrations over the process in which two independent entities operate, does not support an antitrust claim. If the Coaches believe they are entitled to be paid something for the sale of software they did not own, whatever those "claims" may be, they are certainly not antitrust claims. In short, the Opposition does not cure the deficiencies in Plaintiff's Complaints and judgment on the pleadings remains warranted.

Of considerable note, in *Bell Atl. Corp. v. Twombly*, the Supreme Court recognized antitrust claims properly dismissed where, "Antitrust conspiracy was not suggested by the facts adduced under either theory of the complaint."[2] The court further held, to avoid dismissal, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."[3] Although the Court may appropriately exercise caution when "dismissing an antitrust complaint in advance of discovery", where, as here, a party pursues antitrust claims absent "enough facts to state a claim to relief that is plausible on its face" the claims should be appropriately dismissed for failure to state a claim.[4]

---

[1] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *Waller v. Hanlo*n, 922 F.3d 590, 599 (5th Cir. 2019) ("The standard for Rule 12(c) motions is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim.").

[2] 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007)

[3] *Id*.

[4] *Id*.

I.        **Plaintiff Offers No Facts to Establish Any Copyrightable
Contribution or Any Intent to Create Jointly Owned Work.**

In the Opposition, Plaintiff contends its unidentified contributions to Defendants' Track & Field Results Reporting System ("TFRRS") surpassed mere "ideas and suggestions," and, conversely, involved "substantive, creative, and intellectual contributions" to Defendants' Track & Field Results Reporting System ("TFRRS"). Yet, it refuses to articulate in the Complaint (or the Opposition) even one "substantive" contribution.[5] The Opposition vaguely contends Plaintiff's contributions "go far beyond general direction and include contributing specific copyrightable expression in the form of data architecture, unique athlete identifiers, validation protocols, and organizations structures"[6] but Plaintiff refuses to support these vague allegations with any specificity – no specific examples as to the "validation protocols", no example of "data architecture," no example of "athlete identifiers," and no identification of the person at the Coaches who purportedly offered any of it.

Further, in its Opposition, Plaintiff places considerable reliance on the Third Circuit decision in *Brownstein*, and attempts to cite it for the proposition that unspecified "encoding rules" combined with a computer program can create co-authorship in that program. This completely misreads *Brownstein*, and the facts of that case, while non-controlling here, provide much more powerful support for Defendants' motion than for Plaintiffs' Opposition.

In *Brownstein*, Lindsay, the co-author of the non-code portion of the joint work, had independently fixed her contributed rules and "system data" in a tangible medium *and had obtained a registered copyright* of her separate work, independent of Brownstein's computer code. Here, Plaintiff fails to allege (i) any copyright registration for its "encoding rules" or anything else it claims to have contributed, (ii) any preexisting fixed work separate from DA's code, or (iii) any tangible artifact that existed before (or apart from) implementation by DA.

3

Plaintiffs essentially argue their contributions *became* copyrightable *because* they were implemented in DA's code. That is not the law in this circuit, and *Brownstein* does not stand for that proposition in the Third Circuit. Indeed, the *Brownstein* court required the very thing that Plaintiff fails to plead here: that the parties each contribute original, creative works protected by copyright.

Instead, when the Coaches should be able to easily plead their <u>own</u> substantive contributions to support their claim, they resort to claiming that "further discovery and proceedings" are necessary to determine the contributions which establish Plaintiffs' copyrightable co-ownership. In effect, Plaintiffs urge this court discovery is necessary for Plaintiffs to determine whether its own contributions amounted to co-authorship. The Court should not allow the cart to be placed before the horse on this claim, as this claim is precisely the type of speculative claim appropriately dismissed on the pleadings.

## II. Plaintiff Admits it Lacks Any Facts to Demonstrate Either Party's Intent to Create Joint Work.

The Coaches admit, as they must, a "'joint work' is 'a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.'"[7] Then, the Opposition acknowledges the lack of any written agreement to establish the intent to co-author the Defendants' software (as it must), but then it urges there is no requirement for the parties to execute a written agreement establishing the intent.[8] The Opposition goes on to argue that the requisite, ***mutual*** intent of both parties (which would be required for an agreement) may be established through the parties conduct and the particular

---

[7] *See* Opposition at p. 8, ECF No. 45 (citing 17 U.S.C. § 101.)

[8] *See* Opposition at p. 13, ECF No. 45.

4

circumstances of the collaboration. Yet again, as with its claims regarding copyrightable contributions, neither the Complaint nor the Opposition offers a single example of any conduct establishing the intent of co-authorship. Indeed, the Complaint fails to allege any facts supporting *Plaintiff's* intent to create a joint work, much less Defendant's intent. Instead of *pleading* the facts necessary to support its claim, Plaintiff vaguely contends the "question of intent is inherently factual."[9]

Here, Plaintiff, as the co-authorship claimant, "bears the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be coauthors."[10] Plaintiff fails to plead facts to suggest it could meet this burden. In fact, Plaintiff fails to so much as plead their own independently copyrightable contribution *or* an intent for anyone to co-author anything with them. Once again, Plaintiff's allegations are wholly unsupported by any well pleaded facts establishing any right to relief. Speculative declarations lacking any substantive factual allegations do not support a valid cause of action.

### III. Plaintiff's Conspiracy Theory Fails to Establish a Valid Unlawful Restraint of Trade Claim.

The Opposition contends that an unlawful restraint of trade in violation of Section 1 of the Sherman Act "may" have occurred during the acquisition negotiations between FloSports and DirectAthletics, Inc. ("DA"). Of course, the Sherman Act does not proscribe independent conduct as one cannot contract, combine or conspire with oneself,[11] and "coordinated activity of a parent

---

[9] *See* Opposition at p. 15, ECF No. 45.

[10] *Ross,* 2021 WL 3286593, at *6 (quoting *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998) (citing Childress, 945 F.2d at 504)); *see also BTE*, 43 F. Supp.2d at 623; 17 U.S.C. § 201(a).

[11] *Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 761 (5th Cir. 2002).

and its wholly owned subsidiary must be viewed as that of a single enterprise."[12]

The Opposition fails to point to any substantive facts to support a claim for unlawful restraint of trade. Rather, Plaintiff alleges conspiratorial facts which it claims may have occurred before FloSports and DA existed as a single entity. According to the Opposition, the parties, immediately prior to the acquisition, "may" have agreed to exclude Plaintiff as part of their acquisition negotiations. And, according to the Opposition, because the entities were capable of conspiring prior to being structured as a parent and wholly-owned subsidiary, these acquisition negotiations "may" have violated the Sherman Act. Moreover, Plaintiff fails to demonstrate how such actions, if they occurred, were harmful to competition. Such a hypothetical contention, lacking any substantive evidence, is precisely the type of speculative claim which should be properly dismissed, makes little, legal sense, and is certainly insufficient to support an antitrust claim.

**IV.     The Opposition Does Not Articulate Any Anticompetitive Harm.**

The Opposition fails to point to any anticompetitive actions or harm pled in the Complaint, where it should be. Instead, it merely reiterates conclusory statements regarding the Plaintiff's frustrations over losing its administrative access to Defendants' software.[13] While Plaintiff contends Defendants' alleged exclusionary practice of limiting Plaintiff's administrative access to the software "degraded the systems functionality"[14] to prejudice and burden competition, it offers

---

[12] *Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752, 771 (1984).

[13] It the Coaches were entitled to administrative access, and lost administrative access, such a claim would sound in breach of contract. Without a contract, the Coaches are left to scramble and shoehorn their complaints into the antitrust claim sought to be alleged in the Complaint.

[14] *See* Opposition at p. 18, ECF No. 45.

no allegations to establish the alleged degradation of the functionality nor how that alleged lacking functionality burdened the competition in the marketplace. Furthermore, although the Opposition vaguely urges "anticompetitive harm not just to itself, but to the collegiate track and field marketplace generally" Plaintiff fails to specify this alleged harm.[15] The Opposition lacks any allegation to establish any actual anticompetitive action harming collegiate track and field.

Once again, Plaintiff fails to offer a single factual allegation as to this precise harm but, instead, offers only a conclusory statement that harm occurred to the entire collegiate track and field sector. Such a conclusory, unsupported claim is appropriately dismissed at the pleadings.

### V. Plaintiff Admits it Maintains Access to TFRRS; Therefore Plaintiff Cannot Establish a Claim Under the Essential Facilities Doctrine.

In the Opposition, Plaintiff admits it maintains access to Defendants' software and merely lost its administrative access. With that, Plaintiff urges a distinction between meaningful and unreasonably limited access to claim the access it maintains (the access of all other users) is unreasonably limited. Moreover, Plaintiff contends the question of whether it maintains adequate access to Defendants' software is one which cannot be resolved on the pleadings. Once again, the Opposition acknowledges Plaintiff lacks the facts necessary to adequately plead its claims but contends discovery is necessary to reveal the factual allegations giving rise to the claims asserted. On this legal point, the Coaches – once again – miss the mark.

At this stage of the proceeding, Plaintiff is required to have plead sufficient facts to support a claim. That is a legal issue. Only if they can plead those sufficient facts are they entitled to turn to the factual foraging through discovery that they appear to seek. From a purely legal basis, the Coaches do not plead sufficient facts to permit further discovery into whether the Essential

---

[15] *See id.*

7

Facilities Doctrine is applicable or not. To the contrary, Plaintiff's repeated demands (throughout its Opposition for discovery to reveal the facts necessary to support its claims, expose Plaintiff's lack of any viable claim and the appropriateness of dismissal at this stage.

### VI.    Plaintiff Presents No Valid Claim Under the Clayton Act

The Opposition goes to great lengths to devise a Clayton Act claim under the theory of *potential* competition. That said, to state a claim for anticompetitive merger, Plaintiff must define the relevant market and show the likelihood that anticompetitive impact will flow from the merger or acquisition.[16] Here, the Complaint (and the Opposition, for that matter) fail to define the relevant market or establish any likelihood that the acquisition had an anticompetitive impact on any market. Instead, Plaintiff contrives hypotheticals as to an alleged interest to obtain control over TFRRS (Defendants' software) through the acquisition. Such hypothetical contentions fail to amount to the factual allegations necessary to support the claims presented.

### CONCLUSION

Plaintiff offers no specific facts to support its claims for copyright co-ownership, unlawful restraint of trade, or anticompetitive merger. Instead, Plaintiff repeatedly concedes its lack of a factual basis by arguing that discovery is needed to substantiate its claims. This position is contrary to established pleading standards. Because Plaintiff has failed to allege well-pleaded facts that would entitle it to relief on any of its claims, Defendants respectfully request that the Court grant their Motion for Judgment on the Pleadings and dismiss Plaintiff's claims with prejudice.

---

[16] *David B. Turner Builders LLC v. Weyerhaeuser Co.*, 603 F.Supp.3d 459, 466 (S.D. Miss. 2022), *aff'd sub nom. New England Constr., L.L.C. v. Weyerhaeuser Co*. (5th Cir. Mar. 8, 2023) (citing *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc*., 732 F.2d 480, 491–92 (5th Cir. 1984)).

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

*/s/ Lesli D. Harris*
Lesli D. Harris (#28070)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
lharris@bakerdonelson.com

**ATTORNEYS FOR DEFENDANTS
FloSports, Inc. and DirectAthletics, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record for all parties.

*/s/ Leslie D. Harris*